Colcock, J.
On the first ground, I am clearly of opinion, that the marriage was a release at law, of all contracts existing between the husband and wife before marriage ; but the court of equity would, perhaps, under circumstances, enforce the contract, and consider the husband as a trustee for the wife.
The sécond ground involves a question of great importance to the community. It is contended that by the act of the 8th March, 1785, aH 'marriage settlements are to be recorded in the secretary’s *424 office, or be void ; and that this settlement, not being so recorded? is consequently, void. Since the passing of that act, thefe hatfe been several acts on the subject, of which I shall hereafter take notice, but which I do not think can affect the question. The point will be determined by the construction given to this act, and the act of the 17th of March, passed at the same sitting of the legislature. I cannot conceive that there is any thing in the act of the 8th March, which warrants me in determining that marriage settle, ments, made subsequent to that time, should be recorded in the secretary’s office. The words of the act are, “ all and every mar--rrage contract, deed, or settlement, now actually existing, after being duly proved, shall be recorded, or lsdged in the secretary’s office, to be recorded on or before the 1st September nextand “ all that shall hereafter be entered into for securing, &c., shall within three months after the execution thereof be duly proved, and in like manner to be recorded ; excepting such as shall be lodged or recorded . in the said office.” The construction I give to these words is this i all marriage settlements now existing, shall be recorded in the secretary's office by the 1st September, and all that shall hereafter be entered into, shall be recorded somewhere ; leaving it to the p.arties to determine where, as most probably the nearest place of re« cording would be naturally resorted to. And this construction is warranted, as well by the language of the act, as by the existing state of things at that period. In the first place, it is warranted By the language of the act of the 8th March ; for what meaning cart be attached to the exception contained therein, unless this construction be given ? all hereafter to be made shall be recorded somewhere, except such as shall be recorded here. This is plain and intelligible ; but those who contend for’ a different can. struction must make the act speak this language, “ all marriage settlements, hereafter to be entered into, shall be recorded in’ the secretary’s office, except such as shall be recorded or lodged in the Secretary’s office, which is absurd and' unmeaning. If the’ act had intended that all, hereafter to be made, should be recorded in the secretary’s office, how easy would it have been to say, “ that all hereafter to be made should be recorded in the' said office, within three months from the date of the execution thereof.’'’ But if any objection should be made to this construction, it must cease when we turn to the 47th clause of the county court act, passed on ,the 15th March, during the same sitting of the legislature. By which the clerks of the several courts, thereby established, are required to transmit, twice a year, to the secretary’s office, there to be recorded, *425 a memorial of marriage settlements, which shall have been proved and recorded in their respective courts. Let us now turn our attention to the state of the country at that time ; a long and arduous struggle for our liberty had been but a short time before concluded ; during which little or no attention had been bestowed on the civil concerns of the country. The upper country bad greatly increased in population, and there were very few courts, and no places for recording papers established. Some amendment in the police of the upper country, was become indispensably necessary; and this was intended to be effected by the county court act. Courts were established, and. the clerks thereof appointed recorders; by 23d clause, p. 314, all deeds and conveyances are required to be recorded in the respective counties where the property shall be, by 45th clause ; and, lastly, by the 47th, the clerks aré required to transmit a memorial to the secretary’s office, as a place of general information for the citizens of the county, where they might ascertain the incumbrances, on any property offered for sale or mortgage. When these courts were abolished, the act, 21st December, 1799, trans-' ferred the power of recording and the record to the respective courts, as established by that act. Some comment was made on the act of 1792, which recites the act of ’85 ; but that act cannot apply to this case, for it relates only to those settlements which existed, and were of legal force and operation, at the time of the passing of the act of 1785. Add to all this, the general opinion that has prevailed, I think I may say among all classes of men, as to the meaning of the acts, such deeds have been uniformly recorded in the county or district where the parties lived. I am of opinion, the recording in this case was good. But the deed not being effectual in law, 1 am against the motion.
Smith, J.
By the act of the legislature, passed on the 8th March, 1785, it is expressly required, that marriage settlements shall be recorded in the Secretary of State’s office ; and by a clause in the act passed the 17th of March, of the same yearj and during the same session, and of course by the same members, it is said, that a memorial of marriage settlement, &c., &c., shall be registered in the secretary’s office, &c., and in the latter part of the clause, as if by chance, it is expressed in the words folio iving : “ And the clerks of all, and every of the county courts, within this State, are hereby required, twice in every year, &c., &c., to transmit memorials of all such deeds, &e., &c., as shall have been proved and recorded in their respective courts, the preceding half year, to the secretary’s office, to be there registered as aforesaid.” But in this act, there *426 js not a single word requiring that they should be recorded in the-county courts. Nor is there a single sentence or word that operates to repeal this act of the 8th of March. Acts in pari materia, musi eonsii'ued with a reference to each other. This is the rule; but, before it can apply, there must be something whereon it can operate. An accidental word, or half sentence cannot be in pari materia, nor do I think it easy to account for this latter clause. But the first act, which is positive, ought upon no rule of construction to be impaired, much less abrogated, by a few unmeaning words.
The act of 1792, on the same subject, if it bears on the case at all, would go to support the act as far as legislative construction could weigh, of the 8th of March. As to the consequences which would result from this construction, it is not for the judge to say. Let those who have incautiously recorded their marriage settlements in the county courts, make the best of it. I am, therefore, of opinion, that the rule ought to be discharged.
Brevard, J.
In this case, two questions are submitted to the consideration of the court.
1. Whether the articles of marriage settlement, entered into by the intestate, with his wife herself, dum sola, became void, by their subsequent intermarriage? and,
2. Whether the deed of settlement, or marriage contract, not being recorded in the office of the Secretary of State, was therefore void as to creditors ?
As to the first point, it seems to me that the contract was released by the subsequent marriage of the parties to it.
Let us now.enquire what are the rules of law which apply to, and govern this question.
By marriage, the husband and wife become one person in law. Her legal existence is suspended ; and all compacts made between them while single, generally speaking, are avoided by the intermarriage. Co. Lit. 112. Cro. Car. 551. 1 Bl. Com. 442.
Articles entered into before marriage, with the woman herself, and not with a trustee on her behalf, will be decreed to be executed by a Court of Equity. But at law, the subsequent intermarriage amounts to a release of the contract. 2 Ventr. 343. 3 Wooddes. 444. 2 Vern. 481.
In the case of Milbourn v. Euart and others, 5 T. R. 381, the wife, after the death of her husband, was permitted to sue in a court of law, and recover a sum of money due upon a penal bond, which was given to her by her husband, before their marriage, in contemplation, and in consideration of tho subsequent marriage. *427 The money was intended for her benefit if she survived Mm, and the bond was not payable by the husband, but by his representa-lives, twelve months after Ms decease. It was held that the marriage did not extinguish the obligation. This case appears to have been decided partly on' the authority of the case of Cage v. Acton, 1 Lord Raym. 515.
There seems to be a distinction between a trust and a legal es. tate. The particular tenant of a trust estate, cannot bar a contin. gent remainder. Of a trust estate, the husband way be considered as standing seized. And where the trust is not to be executed by him, but by another after his death, upon a contingency, which may never happen,! can see no necessity for resorting to a Court of Equity after his death, in order to compel the performance of the contract. The contract may be considered as existing during the coverture, but so as not to impose any duty or obligation on the husband, or any thing to be done by him in his life time, by way of performing the contract. The contract is not void by the subsequent marriage, but remains valid as a trust, which may be protec. ted by a Court of Equity, After the death of the husband, the equitable claim of the obligee is converted into a legal right, which a court of law may enforce. This is the only way in which I am able to reconcile the cases adjudged at law on this point, with the general doctrine applicable to the subject.
If a man marries his debtor, the debt is gone. Co. Litt. 264, 6. The personal estate of the wife rests instantly on the marriage, in the husband. It is considered as a gift to him, or a purchase by him, in consideration of marriage : or rather it is because the wife can have no separate property of a personal nature, resting in herself, during the coverture; for husband and wife are but one person in law. So, choses in action belonging to the wife, may be reduced into possession by the husband during the coverture, and become his property. Co. Litt. 351, b.
In the case of a bond given to the wife before marriage by the husband, payable after his death, the debt.is a chose in action, which the husband cannot reduce into possession, and, therefore, it belongs to the wife as her sole property. In such case no rule or principle of law is infringed, by allowing the debt, or obligation to subsist, notwithstanding the subsequent marriage of the .parties, and to be recoverable by the wife, or her representatives, after his death. But not so in a case like the present. The property in the slaves in question, the legal estate, must reside in some person during the coverture. In whom did it rest in this case ? Certainly it could *428 not abide in the wife. It would be repugnant to the law of mar. riage to suppose so. She could have no separate estate in a per. sonal chattel. She could not hold the property in trust for herself; an^ s^e C0UN yet ^ie legal estate would be in the husband. If it vested in the husband on the marriage, as it clearly did, then what estate did he take at law? An absolute unconditional estate.
It has been said, that the contract created a trust; and that the husband must be regarded as a trustee for his wife. In equity, I am of opinion, it may be so considered; and upon application to a court of equity, and all parties interested being before that court, the widow of the intestate may be completely relieved : provided there is no fraud or laches, which ought to exclude the equity of her claim. But in a court of law, the claim of the wife must be excluded ; or rather, it cannot appear to have any legal foundation. If it has any foundation at all, it is merely equitable. Upon legal principles, the contract was extinguished by the intermarriage : so for, at least, as respected the settlement of the negroes on the wife. To have attained that object, it was necessary that a trustee should have been interposed, in whom the legal right of the property meant to be settled, might-have vested.' Why is it usual to convey property in trust, in this way, if it be not necessary 1 Precedents are said to teach and illustrate. Many precedents may be found teaching and illustrating this doctrine.
Suppose the bond in the case of Milbourn v. Euart and others, had been given to the wife by some other person than the husband, could the husband have released it ? or could he have reduced it into possession ? At law, if a husband recover judgment for a debt of- the wife, and die before execution, the wife will be entitled. 3 Atk. 21, Bond v. Simmons. The husband, in the case of Milbourn v. Euart and others, could not have even sued and recovered a judgment, though the bond had been given by another.
A husband may devise to his wife, for that does not take effect till after his death. Co. Litt. 112. So, a covenant, or contract, by a man with a woman, is not destroyed by their marriage, where the thing is future, to be.done after the marriage, and after the death of the husband; as to leave the wife worth so much. Hob. 216. Cro. Jac. 511. 1 Com. Rep. 67. 1 Salk. 326. Carth. 512.
• In the. case of Cage v. Acton, 1 Ld. Raym. 515, which in 1 Com. Rep. 66, is called Gage v. Acton, the arguments of Turton and Gould, justices, by whom the case was determined, contrary to1 what Lord Kenyon was pleased to style, “ the flimsy and technical reasoning of Lord Holt,” go expressly upon the ground that no *429 thing was to be performed during the coverture, and that the obligation could not be sued during the coverture.
The marriage was held to be only a suspension, and not an ex-tinguishment of the debt; because it was not to become due till after v . the husband’s death. This appeared by the condition of the bond, which was parcel bf the obligation. The cases which make mar. riage.to be a rélease of a debt, they said, are founded, upon an absolute contract, and not upon such a qualified contract as the one before them. ■
Lord Holt, on the contrary, held, that the bond debt was extinguished by the intermarriage, because he considered it as a present debt; and the condition, in his opinion, made no alteration. The husband, he said, was to receive the money, and in his own right; and therefore, he could not, at the same time, be the person bound to pay, “ and no intention of the parties can alter the law.” But, he admitted, that where the wife has a right, or duty, which by no possibility can accrue to her during coverture, the husband cannot release it. The intermarriage, therefore, will not, ex consequenti, extinguish it. I Salk. 326.
The right of the wife in the present case, to the benefit intended by the settlement, was to accrue during coverture as well as after-wards ; and to give it effect, the observance of it by the husband during the coverture, should have been enforced : or, it might have been necessary to enforce it. Therefore, it might have been released by the husband, and if so, it was extinguished by the intermarriage.
If this doctrine be sound, it is decisive of the motion, and in favor of the plaintiff in the present case.
B.ut, as it is desired that the other question submitted in this case may be decided, I shall proceed to consider it also, and declare my opinion upon it.
It has been insisted for the plaintiffs, that the deed of marriage settlement, though it should be regarded as valid, notwithstanding the marriage, yet ought nevertheless, “ to be deemed and declared to be fraudulent in respect to creditors, and liable to the payment and satisfaction of the debts due by the party who made the deed, to all intents and purposes, as if such deed had never been made because it was not recorded, nor lodged to be recorded in the office of the secretary of state, according to an act of assembly, entitled “An act to oblige persons interested in marriage deeds and con. tracts, to record the same in the secretary’s office of this State,” passed the 8th day of March, 1785.
*430 The defendant, on the contrary, contends, that the deed being recorded in the oiBce of the clerk of the district court of Richland, entitled all persons interested therein, to every benefit which might have been claimed under it, if it had been recorded in the secretary’s office ; and to maintain this ground, reliance has been placed on the 47th section of an act, passed the I7th day of March, 1785, entitled “ An act for establishing county courts, and for regulating the proceedings therein.” The section of the act relied on states, by way of introduction to the enacting part, that to the end that •persons who are inclined to lend money upon the security of lands or negroes, or because purchasers thereof may more easily discover whether the lands or slaves offered to be sold or mortgaged, be free from incumbrances, be it enacted, &c.” The enacting part requires, “That a memorial of all sales and conveyances, mortgages, marriage settlements, deeds of trust, whereby any lands, or slaves, the property of any persons residing in this' State, charged, incumbered, or passed from one person to another, shall be registered in the secretary’s office, in books to be kept for that purpose.”
And the act directs'what such memorials shall contain. And it requires “ the clerks of all and every of the county courts within this State, twice in every year, to transmit memorials of all such deeds, settlements, mortgages, or other conveyances, as have been proved or recorded in their respective courts, to the secretary’s office to be registered.” To' this section of the act is added a proviso, “that nothing therein contained shall extend, or be construed to have any retrospective operation, or to affect any deeds or other conveyances theretofore registered, or to be registered, as by law-directed,”
In giving construction to this act of assembly, it was supposed by the defendant’s counsel, that the .legislature intended to establish different modes for the enrollment or registry of deeds; and that in one section of the State, where county courts were, not established, certain deeds were to be recorded in the secretary’s office; and where county courts were established, the same kind of deeds and others, were to be recorded in the clerk’s office of the several and respective counties. But this supposition appears to me to be wholly unfounded. The construction, therefore, which is bottomed upon it, cannot be maintained.
At the same time when this act passed, county courts were, not practicably established in any part of the State; but by an act which passed the 12th day of March, 1785, the whole State was divided into counties. The district of Charleston was divided into six *431 counties, and Georgetown was divided into four. Court houses were directed to be built in each county, in order that courts might be therein held. A few days after the passing of this act, another act Was passed for establishing county courts “ in every county of this State.” In this last mentioned act, it, contained the provision requiring the registry in the secretary’s office of a memorial of sales, &c.
At the same session of the legislature, on the 8th of March, 1785, the act passed to oblige persons interested in marriage contracts, to record them in the secretary’s office. I agree with the defendant’s counsel, that all these ac’ts are to be regarded as cotemporaneous, and that neither should have precedence by reason of the priorty of its date. They were all passed at the same legislative session ; and the whole session must be considered as one day in law. But I do not regard the latter act as in,pari materia with the first; nor can I perceive any necessity of construing it in any manner so as to repeal, alter, or restrain, the operation of the first. The first was intended for the security of creditors, and to prevent fraudulent settlements to their prejudice. It was intended to oblige those inte, rested in marriage deeds, to record them in the secretary’s office, in order that creditors might have notice : and if they neglect to do so, or lodge the deeds in the office to be recorded, conformably to the act, the same are to be considered void as to creditors, and as if they never had been made. The section of the county court act, which, is relied on, contains no provision, and imposes no obligation, inconsistent with the requisitions of the former act. Can the apparent uselessness of the provision in this act, as to the marriage settlements, operate a repeal of the former act, or a material altera, tion thereof, by implication ? It would be most extravagant to suppose that it would. May not both acts as well stand together as independent regulations ? Let,us investigate this point. A preceding section of the county court act established the mode of proving and recording deeds for the transfer of real property; they were directed to be recorded within a limited time, in the clerk’s office of the county where the lands lay, &c., and if they were not recorded, they were to be' deemed void as to the creditors, or subsequent purchasers. Then follows the section which is .ini question. It was intended for the security of such as might be inclined to lend money upon the security of lands or negroes, or to become purchasers thereof, by giving them notice of all existing incumbrances, in the mode prescribed by the act; that is to say, by a memorial of sales and .conveyances, mortgages, mar *432 riage settlements, and deeds of trust, registered in the secretary’s-office. And the clerks of the county courts are required to transmit such memorials of the deeds recorded in their respec-l‘ve °®ces- ®ut act only directory. No penalty is provided for neglect of duty. No conveyance can be impeached. The legal effect of a marriage contract cannot be questioned under this act, by any money lender, or purchaser, for the default of any clerk, or thq neglect of any other person, in omitting to register any such memorial; and yet money lenders and purchasers are those, expressly, for whose security the law was specially made. It was a law well intended, no doubt, but it could have no effectual operation to answer its design. In some respects it was wholly useless and idle, as many other legislative provisions are.
Among other deeds, of which memorials are required, marriage settlements are mentioned. It cannot well be supposed that the legislature could have intended any thing so unnecessary and absurd, as to require the registry of marriage settlement deeds in the secretary’s office, for the security of creditors, when but a few days before an act was passed, amply and effectually providing for their security, by declaring null and void all marriage contracts to their prejudice, not fully, and at large, recorded in the same office of the Secretary of State. We ought not, where it can be avoided, to impute to legislative bodies, ignorance, absurdity or negligence. Here there appears no necessity to do so, except a small oversight in relation to marriage settlements, in the act requiring memorials to be recorded in the secretary’s office, of deeds registered in the county courts ; which was unnecessary, as all such settlement deeds were before required to be registered in full in that office. Nor is there the smallest necessity for resorting to the construction contended for, arising from the unfounded presumption that the legislature by this provision of recording memorials, intended to restrain and modify the extent and operation of the act first passed in March, 1785. It cannot be fairly expounded to mean any such thing. It was evidently intended for the exclu. sive benefit of purchasers, and those who might be inclined to lend money on the security of negroes and lands : for the benefit of others than those whose interests are protected by the former acts, relating exclusively to marriage contracts.
The act of 1792, amending the act concerning the registry of marriage contracts, contains nothing contrary to the foregoing expositions ; on the contrary, it corroborates and confirms them. Those contracts which are not provided for by the act of 1785, are *433 iequired to be recorded in the secretary’s office, as directed by the act of 1785, made expressly “to oblige persons interested in marriage deeds and contracts, to record the same in the secretary’s office of this State.” There is no distinction made between con- . tracts made in different parts of the State, nor any provision relating .to county courts,, or thd transmission of memorials therefrom.
The act of 1792, declares what shall be the constituent requisite of marriage contracts, deeds, and settlements, made or entered into after the first of June, 1793. It requires that schedules of personal property shall accompany such deeds, and be recorded therewith ; and that in default thereof, such deeds and marriage agreements shall be void, “ with respect to and against creditors, and bona fide purchasers or mortgagees.”
Not a word is said in this act to draw in question the former provisions of the act of 1785, touching the registry of deeds at full length, in the secretary’s office: but .it clearly requires all subse-qhent deeds to be so registered in that office, and that, in default thereof, such deeds and contracts shall not only be void as to creditors, as formerly, but also in respect to, and against, bona fide purchasers and mortgagees.”
On both points my opinion is for the plaintiffs.
Bay, J.
1st. Upon the first point in this case I am very clearly of opinion, that the marriage settlement is good and valid, although no trustees are named in the deed. 'A case was mentioned in the course of the argument, between Bullard and Wife, in which it was said the court of equity decreed such a deed a good one. There could be no doubt but, in equity, such a deed would be held as binding oh the parties. And that court, if necessary, would compel a special performance of the terms of the deed. I hold it, however, equally good and efficacious in a court of law, where a party defends herself under such a deed.
It appears to me, therefore, that this deed may well be construed into a covenant to stand seized for the use of the wife, after the husband’s death. . Marriage is the highest consideration known in law. Any agreement, therefore, between a man and a feme sole, in consideration of an intended marriage between them that she shall hold property to her sole use, after his death, may, and ought to be construed into such a covenant.
It is laid down in 6 Bac. 99, with respect-to consideration of marriage, that a man may stand seized to the use of his wife, and the consideration that she is his wife, will raise a good estate to her in law. Sid. 83. And no precise set of words is necessary to con- *434 St’tu^e suc^ a covenant, where the intent can be collected. And words shall be so construed, that such deed may stand, if possible'. 6 Bao. 100. The peace and happiness of families is part of the nature and end of government, Ibid. 97, and requires such a con-» struction.
The case referred to in the argument, by Mr. Stakkb, the counsel for defendant, in Ld. Raym. 515, is a very strong one; but not, in my opinion,,so strong as the one under consideration. That was a case where a feme sole took a bond from the man she intended to marry, conditioned for the payment of £1,000 sterling, in case she survived him, which was held good after his death. Here is a specific agreement, that in consideration of marriage, the negroes in question should be the wife’s absolutely, in case she survived him.
In the case referred to, as in this case, it was contended that the marriage was an extinguishment of the contract. But the court determined otherwise. It was there admitted, that by the intermarriage, all contracts for debts due in presentí, or in futurio, or upon a contingency which may become due during coverture, are extinct ; because the husband and wife are but one person in law : so that there is no debtor and debtee. The debt would in such ease become extinct. But where 'material rights are created, as well as an obligation to pay money, the court was of opinion that they might subsist together by the rules of law ; for that the law does not love that rights should be destroyed, but that they should be supported and maintained. Ld. Raym. 510, 517.
Now in this case, the express agreement of the parties created a right, and such a right as is perfectly consistent with the rules of marriage, as it was not to have any effect till after the husband’s death, which took place some time after.
It was also further laid down in the case in Ld. Raym. 518, that a release, or pretended extinguishment by the operation of law, will never destroy the provision that was intended for the wife, by the agreement of the parties.
The same doctrine is laid down in 12 Mod. 290,1 Salk. 255, and in Carth. 511, for it would be hard, indeed, if marriage should destroy that, whereof it was the cause : for the rule is modus et conventio vincent legem, and law, by its own operation, will do no wrong ; and since it would be a great wrong to defeat the wife of her provision made before marriage, it would, indeed, be unnatural, as well as unjust, that marriage should be a release of that provision by reason of which, and in consideration of which, the marriage took effect. I am, therefore, of opinion, that the deed in this *435 case was a good one in its creation, notwithstanding there are no trustees named in it; and that the wife, for whose benefit it was made, ought to enjoy the property the husband intended for her after his death.
2. The second point is, that admitting it to be good between the parties, and all claiming under them; yet that it is void as to creditors, not having been recorded in the secretary’s office in Charles-, ton, as the act requires. In order to form a correct opinion on this part of the case, it is necessary to take a concise view of this State, previous to its division into counties in the year 1785. Before that time, there was hut one general office for recording of deeds in Carolina. All deeds for lands or negroes, &c., were required by the then existing laws to be recorded either in the register’s office, or the secretary’s office in Charleston, according to the nature of them. If for lands, in the register of mesne conveyance office; if for ne-groes or chattels, in the secretary’s office in that city ; and the act for preventing double conveyances, declared that the first deed recorded in either, according to their nature, should have a preference.
Nothing is said about marriage settlements, as contradistinguished from other deeds for lands, or negroes, &c., in any of our public acts, from the year 1712 till the year 1785, a period of seventy-three years. Then, for the first time in the history of our legislation, we hear of marriage settlements.
The act of the 8th of March, 1785, Pub. Laws, 357, after reciting the inconveniences to creditors and others, of keeping marriage contracts in the hands of the parties without recording, declares, “ that all marriage contracts then existing shall be recorded, or lodged in the secretary’s office, to be recorded within twelve months thereafter. And that all marriage settlements thereafter to he entered into, shall be duly proved and lodged in the secretary’s office aforesaid, to be recorded within three months after the execution thereof; except persons making such settlements out of the State, who shall have twelve months to record them; and that all marriage settlements not so recorded, within the terms above-mentioned, shall be deemed fraudulent as against creditors.”
Afterwards, again, in the same month and year, 17th of March, 1785, the county court act passed, dividing the State into counties, and establishing courts of jurisdiction in each county, and an office for recording deeds for lands within them respectively ; and the forty-fifth clause of the act declares that all deeds shall be recorded in the said offices, for lands lying within the said counties, within *436 six months after the' execution. And if the person making such deed resides in any other State, then within twelve months. And if out of the United States, then within two years ;after the execution of the same. If not, then such deeds shall be only good between the parties themselves ; but not against creditors or subsequent purchasers. In this clause no mention is made of marriage settlements, or negroes, or other goods and chattels. It appears to be confined to lands only, yet the forty-seventh clause of the act seems to enlarge the operation of the act on this subject, and to include the whole. The words of the latter clause are these : “ And to the end that persons who are inclined to lend money upon the security of lands or negroes, or to become purchasers thereof, may more easily discover whether the lands or slaves offered to be sold or mortgaged, be free from incumbrances; Be it enacted, &c., that a memorial of sales and conveyances, mortgages, marriage settlements, deeds of trust, whereby any land or slaves, the property of any persons residing in this State, is charged, incumbered, or passed from one to another, shall be registered in the secretary’s office, in books to be kept for that purpose ; which memorial shall contain the date of the deed or conveyance, the names, surnames and additions of the parties thereto, the’consideration mentioned therein, the lauds conveyed, settled or mortgaged, and where the same lies; and the number, names and ages of the slaves, if any be sold, settled, or mortgaged. And the clerks of all and every of the county courts within this State, are required twice in every year, in the months of January and June, to transmit memorials of all such deeds, settlements, mortgages, or other conveyances, as shall have been proved and recorded in. their respective courts, the preceding half year, to the secretary’s office, to be there registered as aforesaid.”
These, I believe, are all the acts and clauses of acts, relating to the recording of deeds or marriage settlements, which have been passed in this State, since the year 1712 ; or, at least, all that are in force. From all which I infer, that if no other act had passed upon the subject, but the act of the 8th of March, 1785, it would have been conclusive, however inconvenient it might have been to the citizens at large. They must have submitted to it; and all marriage settlements must have been recorded, as that act directs, in the secretary’s office. '
But the 45th clause of the county court act of the 17th of March, 1785, ^aid a broad foundation for improvement on that subject, by establishing an office for registering deeds and conveyances for lands, *437 in every county in the State ; and although nothing is said about marriage, settlements, eo nomine, in that clause, yet if lands had been conveyed in trust for the use of a woman after her husband’s death, I see no legal objection to the validity of such a deed, upon its being duly proved and recorded as the clause directs, any more than there would be against,mortgages for securing the payment of money ; for a deed of conveyance for lands, is the nomen general-issimum for every species of transfer of land from one man to another, and will include not only absolute fee simple estates, but also all estates upon condition, for lives,-or upon trust, or for years, &c., and the words of the. clause refer to such estates.
As, however, the 45th clause of that act might not seem broad enough to include marriage settlements, not only for lands, but also for negroes, &c., the 47th clause goes all lengths, and appears to me to be fully explanatory of the intent and design of the law makers, and that they were all meant and intended to be recorded in the different offices in the counties. For why should that clause, in order to encourage persons to lend money, and to enable them to find out whether there were any incumbrances on lands and ne. groes, direct and enjoin that memorials or transcripts from the records in the different register’s offices of the several counties, should be made out and prepared, of all sales, conveyances, mortgages, marriage settlements, and deeds of trust, both of lands and negroes, and sent down twice a year to the secretary’s office, to be registered in books to be kept for that purpose there ; unless it had been intended that all such deeds, mortgages, and marriage settlements should have been previously recorded in the county register’s office? Surely it would have been a vain and an idle thing to have required it, if it had not been the intention of the legislature, that all these offices should be open, and free to all the citizens residing in the counties, openly and freely to record all those instruments above enumerated. The two clauses would have been opposed to, and at war with each other, on a contrary supposition. But if the view I have taken of them be correct, then the whole will be consistent, and both the clauses will stand together and correspond with each other.
I confess that these clauses might have been penned with more accuracy and precision ; or they might have been thrown into one clause as relating to the same subject. But one part of the statute must be so construed by another, that the whole may, if possible, stand, ut res magis valiat quam percat. It is a duty incumbent on the court to give such a construction on the whole, as was most *438 cons*stent w*lb the ends and designs of the law makers ; and that, in my opinion, was to allow marriage settlements, as well as all other deeds of conveyance whatever, to be recorded in any of the count‘es where the parties reside. Indeed, this seems to have been the general construction given to the clauses of the act in question, ever since the establishment of the county court system, a period of thirty years ; a length of time sufficient of itself to have constituted a part of the common law of the land, even if the act had been silent on that subject; because, so long an acquiescence evinces the wisdom and salutary nature of such a regulation, when no one possible inconvenience 'can arise by an adherence to it. Numberless and great evils would arise from a contrary construction. If this point were, therefore, doubtful under the 47th clause of the act, it would be the duty of the court to throw its weight into the scale of general convenience. I admit, that arguments db incenvenienli, ought to have little weight against positive law ; but, in all doubtful cases, or where the scales are nearly equipoised, there they may, and ought to prevail, for the general benefit of the community. I I have given this case the most serious consideration in my power, and am in favor of the mo.tion on both grounds. 1. That the deed is a good and valid one in law. 2. That it has been well and duly recorded.